American Chain & Cable Company, Petitioner *v.* Workmen's Compensation Appeal Board (Albert R. Weaver), Respondents.

Submitted on briefs at Special Session in June, 1982 before Judges BLATT, WILLIAMS, JR. and DOYLE, sitting as a panel of three.

*Robert J. Stewart,* with him *Patricia A. Butler, Liverant, Senft and Cohen,* for petitioner.

*Marc S. Jacobs, Galfand, Berger, Senesky, Lurie & March,* for respondent, Albert R. Weaver.

OPINION BY JUDGE DOYLE, December 29, 1982:

On October 27, 1978, while Albert Weaver (Claimant) was employed by American Chain & Cable Company (Employer), Claimant's body (including his head, face and neck) was splashed with acid. Claimant was hospitalized with severe burns and remained out of work for a sixteen-month period. Claimant received compensation for temporary total disability during that period of absence from work. On or about February 27, 1980, Claimant filed a petition alleging that he had suffered serious, permanent and unsightly disfigurement of the head, face, and neck as a result of the job related injury. Following a hearing which was held on May 14, 1980, the referee awarded

Claimant twenty-five weeks of compensation for the serious and permanent scarring. Claimant, however, filed an appeal, alleging that the referee had capriciously disregarded evidence due to the absence of findings of fact which described the disfigurement for which compensation was awarded. Following a review of the evidence that had been offered at the hearing, and after observing Claimant's scarring,[1] the Workmen's Compensation Appeal Board (Board) found that the referee's award was insufficient. As a result, the Board reversed the referee's award, and substituted therefor, an award for seventy-five weeks of compensation. Employer's appeal to this Court followed.

Employer contends that the referee's findings of fact were supported by substantial evidence and therefore it was improper for the Board to accept additional evidence, that is, the viewing of Claimant's scarring. There is considerable support for Employer's position in that where the party with the burden of proof prevailed below, the Board may not take additional evidence and substitute its findings for those of the referee's if the referee's findings are supported by substantial competent evidence. *Forbes Pavilion Nursing Home, Inc. v. Workmen's Compensation Appeal Board*, 18 Pa. Commonwealth Ct. 352, 336 A.2d 440 (1975).

In *Universal Cyclops Steel Corporation v. Krawczynski*, 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973), we established the rule that the Board could not substitute its findings for those of the referee without taking additional evidence. Thereafter, in *Forbes Pavilion Nursing Home, Inc.*, we interpreted

---

[1] 34 Pa. Code 111.14(a) requires, "In cases involving disfigurement or commutation the claimant shall appear in person."

the 1972 amendments to the Pennsylvania Workmen's Compensation Act[2] to restrict the Board's authority to take additional evidence to those instances where the findings or decision of the referee is not supported by substantial competent evidence. Nevertheless, in *Workmen's Compensation Appeal Board v. Jones and Laughlin Steel Corp.*, 25 Pa. Commonwealth Ct. 542, 360 A.2d 854 (1976), we held that the Board's reception of evidence by its personal view of a claimant's scar in a disfigurement case was proper as an exception to the general rule in *Forbes*.

Subsequently, our Supreme Court in *McGartland v. Ampco-Pittsburgh Corp.*, 489 Pa. 205, 413 A.2d 1086 (1980) held that workmen's compensation cases involving loss of use were no exception to the general rule established in *Forbes* that the Board cannot take additional evidence and substitute its own findings for those of the referee, where the referee's findings are supported by competent evidence. Commonwealth Court has since extended the precise rule of *McGartland* to apply also in disfigurement cases. *Purex Corp. v. Workmen's Compensation Appeal Board*, 66 Pa. Commonwealth Ct. 499, 445 A.2d 267 (1982); *St. Joe Zinc v. Workmen's Compensation Appeal Board*, 59 Pa. Commonwealth Ct. 363, 429 A.2d 1262 (1981); *United States Steel Corp. v. Workmen's Compensation Appeal Board*, 52 Pa. Commonwealth Ct. 641, 416 A.2d 619 (1980), and consequently has seemingly overturned, sub silencio, the exception established in *Jones & Laughlin Steel*.

These cases have not, however, removed from the province of the Board the task of determining wheth-

---

[2] Section 3 of the Act of February 8, 1972, P.L. 25 (Act No. 12) and Section 23 of the Act of March 29, 1972, P.L. 159 (Act No. 61), *amending* Section 423 of the Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §854.

er the referee's findings and conclusions are supported by substantial competent evidence.[3]

In the case sub judice, the only findings the referee made in regard to the claimant's scar were as follows:

6. Claimant suffered burns of arms and chest in the injury of October 27, 1978 which resulted in his being temporarily totally disabled for the period October 27, 1978 to February 5, 1979.

7. The claimant has scarring of the head, face and neck which are serious and permanent.

8. The referee has made an observation of the scarring of the claimant's head, face and neck.

and thereupon concluded, as a matter of law, that claimant had a serious and permanent disfigurement of his head, neck and face of such a character as to produce an unsightly appearance. Apart from the referee's own view, these findings were based upon the record description of the claimant's scars by his counsel and three polaroid photographs, two of which were of the claimant's chest and right arm (an area not compensable), and one woefully inadequate photograph to demonstrate scarring of the claimant's face and head.

In any disfigurement case, the referee inevitably bases his findings of fact and determination of compensability on his personal observation of the scarring or damage to the normal appearance of the claimant. *See St. Joe Zinc; United States Steel.* Unlike other compensable injuries disfigurement is not best determined by expert medical testimony or by testimony

---

[3] The Board's opinion stated:

[I]t is our position we are not precluded from "looking" at scars to determine whether or not there has been a capricious disregard of competent evidence.

from witnesses describing what the claimant's disfigurement looks like. Rather, it is the physical appearance of the claimant himself which constitutes the evidence considered by the referee. It is precisely because this essential physical evidence considered by the referee is difficult to preserve for the record that disfigurement cases are troublesome. The recitation of verbal descriptions of a scar is helpful but often woefully inadequate to accurately preserve evidence which is received by the referee by his visual perception of that physical evidence.[4]

Unlike most other awards where the number of compensable weeks is fixed once the referee concludes

---

[4] This distinguishes disfigurement cases from loss of use cases. In determining loss of use, the referee, while necessarily receiving some evidence in a visual observation of the claimant, also takes essential evidence in the form of testimony from the claimant and others as to the use limitations the claimant has experienced and functions which he can no longer perform. *See e.g. McGartland*, 489 Pa. at 208, 413 A.2d at 1087 where the Supreme Court noted:

Claimant stated that he could not hold objects of any weight, open a car door, button his clothes, or use his left hand to bathe. Claimant's physician stated unequivocally that claimant's left hand was lost for all practical purposes because of the loss of mechanism created by amputation of claimant's index, middle and ring fingers. . . .

The referee in a loss of use case does not rely as exclusively on visual evidence as in a disfigurement case. Even if care is taken to develop detailed and accurate descriptions of disfigurement in the record, words alone seldom capture the subjective elements fundamental to the referee's decision. While we can describe the length, location and color of a scar, can we adequately verbalize the impact of these factors which combine to create a degree of "ugliness", if you will, for which a claimant should receive a certain compensation? Clearly, there is a need for consistency in disfigurement awards and detailed and accurate standards. But the judgment of the referees will remain subjective; a "half-inch red line on the chin" could be disfiguring on one man's face and add character to another's.

that an award is justified, in disfigurement awards, Section 306(c) of the Act establishes in a clear and precise manner the necessity for the referee to find not only the factual elements necessary to support an award, but vests with the referee the discretion to fix the number of weeks up to a maximum of two hundred and seventy-five, based upon his subjective evaluation of the unsightly appearance of the disfigurement. There must be therefore, substantial competent evidence to support not only an award, but also the *amount* of the award as well.

When the *amount* of the award is unsupported by such substantial evidence, then the Board may accept additional evidence, and the most meaningful evidence there could possibly be, is the view of the disfigurement itself.

In certain circumstances, such as here, where the referee made no findings actually describing the disfigurement for the benefit of a subsequent review and appeal to the Board, a view of the scar would be the only meaningful way to establish whether the opinion of the referee is indeed supported by substantial competent evidence.

Therefore, it was not error for the Board to take additional evidence by viewing Claimant's scar. As the Board explained:

> Since *McGartland* we have not substituted our findings for the Referee lightly. We have done so only if we have felt the Referee capriciously disregarded competent evidence, to wit the scar. We have made no changes of a few weeks but have only either lowered or raised a substantial number of weeks to avoid a grave miscarriage of justice.

The order of the Board is affirmed.

#### ORDER

Now, December 29, 1982, the decision of the Workmen's Compensation Appeal Board dated December 10, 1981 at docket no. A-79252 is hereby affirmed.